## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| VLADIMIR LIPKIN and ANZHELA DEMKIV, individually and on behalf of all others similarly situated,<br><br>     Plaintiffs,<br><br>  v.<br><br>HARLEY-DAVIDSON MOTOR COMPANY GROUP, LLC,<br><br>     Defendant. | Case No.:<br><br><br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Vladimir Lipkin and Anzhela Demkiv ("Plaintiffs") bring this class action against Harley-Davidson Motor Company Group, LLC ("Harley-Davidson", "Harley", or "Defendant") on behalf of themselves and a Class (defined below) under Rule 23 of the Federal Rules of Civil Procedure. Plaintiffs complain of Defendant, based on actual knowledge as to their own acts and information and belief as to all other matters, as follows:

### NATURE OF THE ACTION

1. This is an antitrust action directed at Harley-Davidson's anticompetitive conduct: Harley-Davidson used its warranty to try to force Harley owners to use its own parts rather than the many quality aftermarket parts available for its motorcycles.

2. Defendant's actions violated the Magnuson-Moss Warranty Act and the Federal Trade Commission Act, resulting in charges by the Federal Trade Commission. As a result, Defendant admitted to its misconduct as reflected in the consent decree with the FTC entered on June 22, 2022.

3. Harley-Davidson is one of the most recognizable vehicle brands in the world, and indeed one of the oldest. Founded in 1903, Defendant's roadgoing motorcycles account for

1

approximately half of all roadgoing motorcycles with engine displacements in excess of 601cc.

4.      Because of the longevity and ubiquity of its motorcycles, there is a vast aftermarket for parts to repair and customize Harleys.  Harley-Davidson makes approximately 15% of its annual revenue from parts.  In order to maximize its parts revenue and profit, Harley-Davidson has used its warranty to try to force those Harley owners under warranty to use only Harley-Davidson's own parts and to foreclose or suppress competition from aftermarket parts competitors.

5.      In order to maximize its parts revenue and profit, Harley-Davidson used its warranty to try to suppress competition from aftermarket parts competitors and to force Harley owners under warranty to use only Harley-Davidson's own parts.

6.      Harley-Davidson illegally tied its own branded parts to its motorcycles (and the factory warranties that go with them). As a result, Harley-Davidson has lessened competition in the market for Harley-compatible replacement parts. This has allowed Harley-Davidson to charge supracompetitive prices for its parts, at the expense of the consumers who buy them.

7.      In June 2022, the Federal Trade Commission stepped in to force Harley-Davidson to stop this unlawful practice.  The Federal Trade Commission, however, lacks the authority to recover consumers' damages. Plaintiffs thus seek to recoup from Defendant their damages and the damages incurred by the Class in the form of their overpayments for Harley-branded parts.

**THE PARTIES**

8.      Plaintiff Vladimir Lipkin is a resident of Cook County, Illinois, and purchased a 2021 Harley-Davidson Road Glide Special  motorcycle in July 2021. He purchased Harley-Davidson compatible  parts  from City Limits Harley-Davidson in Palatine, Illinois and Lake Shore Harley-Davidson in Libertyville, Illinois for his motorcycle while it was under warranty.

9.      Plaintiff Anzhela Demkiv is a resident of Cook County, Illinois, and purchased a 2016 Harley-Davidson Street Glide Special motorcycle in June 2016. She purchased Harley-

2

Davidson compatible parts from City Limits Harley-Davidson in Palatine, Illinois and Lake Shore Harley-Davidson in Liberty, Illinois for her motorcycle within the last 6 years, while it was under warranty.

10.     Defendant Harley-Davidson Motor Company Group, LLC is a Wisconsin limited liability company with its principal place of business located at 3700 W. Juneau Ave., Milwaukee, Wisconsin.

## JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2)(A), because there is more than $5 million in controversy (exclusive of interest and costs) and there is minimal diversity.

12.     Defendant is subject to personal jurisdiction in this District because it purposefully availed itself of the benefit of doing business in Illinois, including this District.

13.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district, including Plaintiffs' purchases of Harley-branded parts and resulting injuries.

## BACKGROUND

### A.  Harley-Davidson Motorcycles

14.     Harley-Davidson was founded in Milwaukee, Wisconsin in 1903. By 1920, Harley-Davidson was the largest motorcycle manufacturer in the world. Along with Indian Motorcycle Inc. ("Indian"), Harley-Davidson is one of only two American motorcycle brands to have survived the Great Depression.

15.     In the 1970s, Harley-Davidson faced waning popularity and near-bankruptcy in the wake of cost-cutting measures that resulted in low quality motorcycles, as well as the introduction of the so-called Universal Japanese Motorcycle ("UJM") – a new category of very similar,

3

accessible motorcycles manufactured by the big four Japanese motorcycle manufacturers – Honda, Kawasaki, Yamaha, and Suzuki, which appealed to American consumers.

16.     In the 1980s, however, Harley-Davidson saved itself from ruin and restored its status and image via its adoption of the large-displacement bicycle, helped expeditiously by the Reagan administration's tariffs against foreign imports of this kind of model. This kind of motorcycle was easily distinguishable, moreover, from the UJM, creating a whole new separate category of motorcycles predominated by a single manufacturer whose brand now became shorthand for the American motorcycle.

### B. Harley-Davidson's Warranty

17.     As of June 2022, Harley-Davidson sold, as a bundle with its motorcycles, warranties valid for twenty-four months, "starting from the earlier of (a) the date of the initial retail purchase and delivery of the motorcycle from an authorized Harley-Davidson dealer; or (b) the third anniversary of the last day of the model year of the motorcycle." *See* Complaint, *In re Harley-Davidson Motor Co. Grp., LLC*, No. 2123140 ("FTC Complaint"), available at https://www.ftc.gov/systern/files/ftc gov/pdf/2123140HarleyDavidsonComplaint.pdf.

18.     Harley-Davidson's 2021 warranty stated, in relevant part, that:

- "Genuine Harley-Davidson parts are engineered and tested specifically for use on your motorcycle. Insist that your authorized Harley-Davidson dealer uses only genuine Harley-Davidson replacement parts and accessories to keep your Harley-Davidson motorcycle and its limited warranty intact."

- "This limited warranty will not apply to any motorcycle … 1. Which has not been operated or maintained as specified in the owner's manual… 4. Which has off-road or competition parts installed to enhance performance, a trailer hitch, or has other unapproved modifications (even if these modifications include genuine Harley-Davidson

4

parts and accessories that are not approved for use on your motorcycle). These modifications may void all or parts of your new motorcycle limited warranty. See an authorized Harley-Davidson dealer for details."

- The "[u]se of aftermarket performance parts may void all or parts of your limited warranty. See an authorized Harley-Davidson dealer for details" and that "the use of parts and service procedures other than Harley-Davidson approved parts and service procedures may void the limited warranty."

- In "[s]ome countries, states or other locations may require all regular maintenance and service work to be done by an authorized Harley-Davidson dealer for your warranty to remain in effect. Check with your local Harley-Davidson dealer for local requirements."

### C. Warranty Coverage

19. Even when customers have endeavored to obey Harley-Davidson's dictate that they only choose Harley-Davidson branded compatible parts, they still risk losing warranty coverage, which the company seeks to limit even beyond the scope of its language.

20. For example, according to comments in public forums, consumers have experienced situations where their dealers record and report repairs that ought to be covered by their warranty as non-warranty repairs, claiming the customer has impermissibly altered their motorcycle by performing modifications unrelated to the issue for which the customer has brought in their motorcycle,[1] including simply mounting a flag.[2]

21. Harley incentivizes the dealers to do this by structuring repair reimbursements – which reportedly can be up to 30 cents on the dollar – differently depending on whether they are

---

[1] Harley Davidson Warranty Fraud Update with Rider Reactions, https://www.youtube.com/watch?v=eIxCLZl5I7M at 6:40 (discussing comment by individual identified as Jim Redmond) (last visited January 15, 2023).
[2] *Id.* at 6:30 (discussing comment by individual identified as Tim Barnett) (last visited Nov. 17, 2022).

5

reported as covered or not. Repairs will get reimbursed immediately for uncovered repairs, but for warranty repairs, dealers must wait up to ninety days to be compensated.[3]

22.     By incentivizing the dealers to void warranties, thus "flipping warranty situations into non-warranty situations,"[4] Harley-Davidson is able to profit in two ways – first, by dodging the repair labor cost, and then making the part into revenue.

### D. The Parts Universe

23.     The parts at issue in this suit are those compatible with Harley-Davidson motorcycle models. Because Harley monopolizes the large, American-manufactured motorcycles market, such parts generally refer to those compatible not only with Harley motorcycles but also with large cc American motorcycles in general. One notable differentiator between Harley compatible parts and parts compatible with, e.g., Japanese motorcycles, is the use of imperial or SAE units as opposed to metric units.

24.     Many manufacturers make and sell motorcycle parts, which may be marketed as Harley compatible. Various online retailers, for example, have sections specifically labeled as Harley-Davidson compatible under which both Harley-branded and third-party manufactured parts are sold. Such third-party parts, which may often be priced lower than Harley-branded parts, are a direct threat to the revenue that Harley enjoys from its parts segment – a threat that Harley has scrambled to control through its unlawful, anticompetitive tying scheme.

### TRADE AND COMMERCE

25.     Harley has sold, and continues to sell, motorcycles and parts in the United States in a continuous and uninterrupted flow of interstate commerce, including through and into this judicial district.  Harley's annual revenue exceeds $5 billion dollars, and it is the single largest maker of

---

[3] *Id.* at 8:20.
[4] *Id.* at 9:20.

motorcycles for the U.S. market, including roughly a majority of roadgoing motorcycles with engine displacements over 601cc.

26.    Harley's business activities were intended to have, and have had a substantial effect on interstate trade and commerce in the United States, including in this judicial district.  There are Harley-Davidson motorcycles registered and on the road in all fifty states and the District of Columbia. These motorcycles, inevitably, will need repairs.

27.    Independent parts makers produce numerous repair parts, as well as performance and cosmetic upgrade parts, for Harley-Davidson motorcycles.  Despite this, Harley-Davidson has kept a larger share of the parts market for itself, and commanded higher prices for its repair parts, because it has used its warranty to unlawfully force Harley owners to use its own branded parts.

## RELEVANT MARKET

### A.  The New Market For American-Made Large, Roadgoing Motorcycles

28.    There are two relevant product markets in this instance.  The first is the market for motorcycles, specifically American-made, new, large, roadgoing motorcycles, which are sold as a bundle with factory warranties. This is the tying market over which Harley-Davidson has market power.

29.    The second relevant product market is the market for motorcycle parts compatible with Harley-Davidson motorcycles (hereinafter "Compatible Parts").  Compatible Parts are distinguishable from parts for other brands of motorcycle by their technological compatibility.

30.    Large, roadgoing motorcycles are a separate product market from non-roadgoing motorcycles, and likewise American-made motorcycles are a separate product market from non-American made motorcycles. American-manufactured, large, roadgoing motorcycles thus constitute their own separate product market.  This is the "tied" market into which Harley-Davidson has captured increased market share and charged supracompetitive prices by using its leverage in

7

the tying market, including its warranty that does not allow owners of new Harleys under warranty to purchase competitors' brands of Compatible Parts without the risk of voiding their warranties.

31.     Large, roadgoing motorcycles are a separate product market from non-roadgoing motorcycles, and likewise American-made motorcycles are a separate product market from non-American made motorcycles. American-manufactured, large roadgoing motorcycles thus constitute their own separate product market.

32.     Roadgoing motorcycles are registered with the Department of Motor Vehicles in the state where the owner resides and can be ridden on the road. A bike or motorcycle that cannot be registered cannot be legally ridden on the road, and for that reason is not a substitute. Dirt bikes, for example, suitable only for off-road use, serve a different function to their riders and so constitute a different market. Prices of dirt bikes thus do not discipline the price of large roadgoing motorcycles, and vice versa.

33.     Nor do small displacement motorcycles constitute part of the same market as large, roadgoing motorcycles. Harley-Davidson makes no roadgoing motorcycle with an engine displacement smaller than 883cc. Smaller displacement engines are almost universal in dirt bikes, and common in certain kinds of road motorcycles, including sport bikes, a market dominated by smaller Japanese motorcycles. Smaller motorcycles, however, lack the passenger and cargo capacities of large roadgoing motorcycles, lack the torque and horsepower that only a larger engine can offer, and lack the look and feel of large roadgoing motorcycles. For this reason, they attract different buyers than small displacement motorcycles. Thus, the prices of smaller motorcycles do not discipline the prices of large roadgoing motorcycles, and vice versa. Harley has in fact recognized the separateness of large roadgoing motorcycles in its public reporting, in which it defines its own market share by roadgoing motorcycles with engine displacement larger than 601cc.

34.     New, large roadgoing motorcycles are sold as a bundle with manufacturers' warranties. Manufacturers' warranties are neither useful nor available without the motorcycle they cover. The availability and terms of manufacturers' warranties distinguish new large roadgoing motorcycles from used, large roadgoing motorcycles.

35.     Consumers have difficulty understanding the lifecycle pricing of a motorcycle. Because new, large roadgoing motorcycles are sold bundled with manufacturers' warranties, riders aim to reduce the cost of ownership to the replacement of consumables: gas, oil, tires, and the like which are normally and naturally used up in the use of the motorcycle, some of which many riders are able and willing to replace themselves. The need for replacement parts is difficult to forecast for any given motorcycle because the need for replacement arises from damage or wear events that are hard to predict, and because the rider has purchased a warranty to defray these costs. Accordingly, when entering into a contract to buy a new Harley-Davidson motorcycle, Plaintiffs and the members of the Class had little ability to forecast the cost of being locked into Harley-Davidson Compatible Parts and losing the opportunity to buy competitors' Compatible Parts.

36.     American-made motorcycles are distinguishable from non-American motorcycles, even within the category of large, roadgoing motorcycles. They are a discrete submarket that does not experience cross-elasticity of demand with, for example, Japanese-manufactured large, roadgoing motorcycles. Indeed, American-made motorcycles – both Harley and its smaller competitors in this space – enjoyed their own dedicated publication for thirty years with American Iron Magazine, thereby demonstrating there was a distinct ridership and following for American-made motorcycles, sufficient to support its own universe of print media.

37.     In contrast to other kinds of vehicles, like cars, for example, motorcycles elicit a specific kind of cultural commitment from their consumers. Motorcycle riders routinely form organizations centered around shared homes and/or cultural heritage, and the motorcycles they ride

9

frequently serve as vehicles to express their patriotism. Indeed, Harley-Davidson offers a variety of American flag kits and other kinds of patriotic memorabilia that can be attached to their motorcycles or worn by riders. The consumer base of Harley-Davidson would find it incongruous with their belief structure to ride a Japanese make of motorcycle, even if such a motorcycle was for all intents and purposes the same thing as Harley's version and similar or cheaper in price.

38.     The company's loyal consumer base is organized into the so-called "Harley Owners Group," or "HOG" – a Harley-sponsored fan club (the logo of which includes a bald eagle) that seeks to brand Harley-Davidson as a distinctly American icon, specifically to appeal to an all-American fan base seeking to celebrate via their motorcycles a shared national heritage. Indeed, the all-American branding effort was a conscious one on Harley's behalf,  as part of its 1980s comeback wherein the company sought to distinguish itself from the increasingly popular Japanese motorcycle. As an American-based, American-manufactured brand, it was able to capture new consumers to the world of motorcycling that would not have otherwise joined.

39.     An  ethnography of Harley riders found that the group qualified as a "subculture of consumption," or "a distinctive subgroup of society that self-selects on the basis of a shared commitment to a particular product class, brand, or consumption activity."[5] The study showed how this burgeoning class of riders, bolstered by Harley's own marketing efforts and establishment of its so-called Harley Owners Group, centered around Harleys as a distinctly American form of motorcycle. Japanese motorcycles would only be bought by Harley aspirants as temporary stopgaps until they could afford the more expensive Harley. While other American brands do figure in this market, notably Indian, which markets itself as the oldest American brand of motorcycle, Harley's scale dwarfs these competitors and is thus the most visible choice to these consumers who will only

---

[5] John W. Schouten & James H. McAlexander, *Subcultures of Consumption: An Ethnography of the New Bikers*, 22 Journal of Consumer Research, Inc. 43 (June 1995).

10

ride American.

40.     If a Harley motorcycle is totaled, or breaks down beyond repair, its rider will not shop around for its replacement – they would rather buy another Harley automatically. While some niche American-made alternatives, like Indian, do exist, only Harleys elicit the prestige and cache of a distinctly American heritage brand. Their presence eclipses any other American brand in the market, with their nearest competitors in terms of market size being the "Japanese Big Four" (Honda, Kawasaki, Yamaha, and Suzuki) and then the German BMW. Other American brands are comparatively unknown and do not figure in the general awareness of the American biking community. Harleys, moreover, can be bought in an abundance of colors, makes, and configurations.

### B.  The Compatible Parts Market

41.     The Compatible Parts market herein is defined by compatibility, specifically with Harley-Davidson motorcycles. To repair a Harley-Davidson motorcycle, the owner must purchase a Compatible Part.  The prices of parts that are not compatible with Harley-Davidson motorcycles cannot and do not discipline the prices of parts that are compatible with Harley-Davidson motorcycles.

### C.  Geographic Markets

42.     The United States is the relevant geographic market for both large, roadgoing motorcycles and parts.

43.     Harley-Davidson distributes its motorcycles throughout the U.S. through a network of independently owned, authorized dealerships.

44.     Harley-Davidson also distributes Compatible Parts throughout the U.S. through its dealer network as well as its online website.

### D.  Barriers To Entry

45.     There are significant barriers to entry in both relevant markets that allow Harley to protect and maintain its market power. The first is technical and regulatory. Motor vehicles for operation on public roads are complex and heavily regulated machines. Engineering a new make of large, roadgoing motorcycle from scratch is an expensive engineering challenge, requiring formidable economic backing. Harley-Davidson's significant competitors are the Japanese Big Four — four large Japanese makers, three of which are conglomerates making non-motorcycle products for a global market – Honda, Suzuki, and Yamaha. Effective entry into the relevant markets would require developing expertise in design engineering in addition to obtaining certifications and approvals necessary to U.S. road registration, including for safety and emissions.

46.     Even a new entrant with engineering expertise would have no guarantee of success because of the importance of brand identity in the market. Harley-Davidson is a 119-year-old brand. Because of the importance of brand heritage in large, roadgoing motorcycles, most new entries by American and even British makers have been revivals of pre-WWII brands, including American names Henderson (which failed after two years), Indian (backed by offroad giant Polaris), and, among British marques, Triumph. There are a limited number of available defunct American motorcycle brands with names that would still resonate among potential customers today.

47.     A new entrant would also need to secure distribution, contending with the legal restrictions many states place on road vehicle dealerships and with the existing dealer networks that could not afford to alienate their suppliers.

48.     The capital outlay necessary to secure a recognizable brand or build one from scratch, to design and market a new motorcycle, and secure nationwide distribution, is very formidable. Most major motorcycle makers in the U.S., other than Defendant (with its venerable brand and fanatical following), have the backing and name of companies with an array of products in markets across the globe. A new entrant to displace Harley-Davidson's dominance would need to

be prepared to bear a large initial investment and keep that capital at risk for a protracted period to build the name necessary to become sustainable and profitable.

49.     Harley-Davidson's own conduct challenged herein created a barrier to entry into the Compatible Parts market. Harley-Davidson's conditioning of its warranty on the use of Harley-Davidson parts provided a powerful disincentive to dealers stocking and riders choosing competing Compatible Parts. A new entrant would have to contend with an already robust market in Compatible Parts for those Harley owners who were not covered by manufacturer warranties or intended to void them; and the new entrant would have no more access to the Class Members, those owners still under warranty, then any of the existing competitors in the Compatible Parts market.

## HARLEY'S MARKET POWER

50.     Harley-Davidson has substantial market power in both relevant markets.

51.     Harley-Davidson has a monopoly in the market for large, roadgoing motorcycles. Its market share in this market, according to its own public reporting, is 44.5%. The remainder of the market is fragmented, and the next four firms in market share are the Japanese Big Four – Honda, Suzuki, Yamaha, and Kawasaki.

52.     Harley-Davidson also possesses substantial market power in the market for Compatible Parts. Its next closest competitor, parts seller Custom Chrome, has an annual revenue of approximately $21.2 million, while Harley's revenue for parts in 2021 equaled approximately $741.8 million. Assuming the U.S. market share for parts holds an equivalent ratio to said market share for new motorcycle registrations, its total U.S. revenue for parts would be approximately $482.2 million – almost 23 times the size of its nearest competitor.

53.     In its February 2022 guidance, as published in its 2021 10-K, Defendant stated that it expected "revenue growth from parts and accessories and apparel and licensing" and that "***growth in revenue from higher-margin parts and accessories*** and apparel, will more than offset the

13

expected cost inflation across the supply chain." (emphasis added).

## HARLEY'S ANTICOMPETITIVE TYING CONDUCT

54.     To maintain its dominant position in the market for parts, Harley uses its monopoly power in the large, roadgoing American motorcycle market (and specifically the manufacturer's warranty bundled with the new motorcycle) to coerce customers not to purchase Compatible Parts from its competitors. Until Harley-Davidson entered into a consent decree with the FTC in June 2022, Harley-Davidson did this by unlawfully tying its warranty to its parts by requiring customers who bought its motorcycles to only use Harley-Davidson's Compatible Parts – or else risk voiding the warranty. This is illegal under the Magnuson-Moss Warranty Act.  In June 2022, the Federal Trade Commission ordered Harley to stop this practice going forward but did not, and indeed lacks the authority to, recoup the past overpayments for parts from all affected Harley owners.

55.     As a result of Harley-Davidson's anticompetitive conduct, its faithful following of Harley owners has been harmed in two ways. First, Harley-Davidson has charged more for its parts than it would have been able to had it limited its warranty terms to what the law allows. Second, Harley-Davidson's riders have been deprived of access to the full range of aftermarket parts the market could support. While there is already a robust market for parts, Harley owners whose motorcycles were under warranty were not free to choose from the array of parts because the choice to use competitor parts came with the threat of loss of warranty coverage.

## INJURY TO COMPETITION

56.     Harley-Davidson's anticompetitive practices in tying the motorcycles and warranties to the parts have restrained trade and have preserved and entrenched Harley-Davidson's market power. Harley-Davidson's conduct has injured competition in the market for parts and has caused injury to owners in the form of anticompetitive pricing for parts.

57.     The injury to competition has caused injury to its competitors, as well as antitrust

14

price injury for its independent dealers – injury that is then passed on, all or in part, to the ridership in the form of anticompetitive pricing. Harley motorcycle owners have paid higher prices for parts because of the tying, which has also impermissibly limited competitive choice for the riders.

58.     Harley-Davidson's tying was unlawful under the Magnuson-Moss Warranty Act. It had and could have no legitimate business or pro-competitive justifications because it is unlawful.

## CLASS ACTION ALLEGATIONS

59.     Plaintiffs bring this class action pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3) on behalf of the proposed Class, and alternative state Subclasses, defined below. Unless otherwise specified, these are referred to collectively as the Class.

> All owners of Harley-Davidson roadgoing motorcycles who indirectly purchased Harley-Davidson Compatible Parts from six years before the filing of this Complaint until the anticompetitive effects of Defendant's conduct cease (the "Class Period") in any of the Indirect-Purchaser Jurisdictions specified below.
>
> Excluded from the Class are Defendant, its parent companies, subsidiaries, and affiliates; federal government entities and instrumentalities of the federal government; states and their subdivisions, agencies, and instrumentalities; and all judges and court staff assigned to this matter.

60.     The Class is so numerous that joinder of all members would be impracticable. While Plaintiffs do not know the exact number of Class members, on information and belief, there are thousands of Class members.

61.     Common questions of law and fact exist as to all Class members. Defendant's conduct was generally applicable to all Class members, thereby making appropriate relief with respect to the Class as a whole. Such questions of law and fact common to the Classes include, but are not limited to:

> a.     Whether Defendant possesses market power m the market for large,

15

American, road-going motorcycles;

b.        Whether Defendant possesses market power in the market for Compatible

Parts;

c.        Whether Defendant acquired or maintained market power in the market for

Compatible Parts by anticompetitive conduct, including its illegally

restrictive warranty;

d.        Whether Defendant coerced consumers who own Harley motorcycles to

purchase its own branded Compatible Parts (e.g., through its illegally

restrictive warranty);

e.        Whether Defendant's conduct caused antitrust injury to consumers in the

form of supracompetitive prices;

f.        Whether Defendant's conduct violated the state antitrust laws alleged in

this Complaint;

g.        Whether Defendant's conduct caused Class members to pay

supracompetitive prices for Compatible Parts;

h.        The appropriate relief for Class members, including the measure of

damages.

62.        Plaintiffs' claims are typical of the claims of the absent Class members, and

Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs and all members of

the Class were similarly affected by Defendant's wrongful conduct in that they all paid

supracompetitive prices for Harley-brand Compatible Parts.

63.        Plaintiffs' claims all arise out of the same common course of conduct giving rise to

the claims of the other Class members. Plaintiffs' interests are coincident with, and not antagonistic

to, those of the other members of the Class that Plaintiffs seek to represent. Plaintiffs are

16

represented by counsel who are competent and experienced in the prosecution of antitrust and class action litigation.

64.     The questions of law and fact common to the Class members predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

65.     Class action treatment is a superior method for the fair and efficient adjudication of the controversy. Among other things, class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of evidence, effort and expense that numerous individual actions would engender. The benefits of proceeding through the class mechanism, including providing injured persons or entities with a method for obtaining redress for claims that it might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in management of this class action.

66.      The prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendants. Defendants have acted on grounds generally applicable to the Class, thereby making final injunctive relief appropriate with respect to the Class as a whole.

**CAUSES OF ACTION**

**COUNT I**
**ALA. CODE §§ 6-5-60 *ET SEQ.***
**(ON BEHALF OF THE ALABAMA CLASS)**

67.     The allegations in the preceding paragraphs are incorporated as if fully stated herein.

68.     Alabama Class members purchased Harley-Davidson Compatible Parts within Alabama during the Class Period. But for Defendant's conduct set forth herein, the price of the

17

Compatible Parts would have been lower.

69. Through its unlawful tying scheme, Defendant acted in restraint of, or to monopolize, trade or commerce in the Compatible Parts market, a substantial part of which occurred within Alabama.

70. Defendant established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the Compatible Parts market, a substantial part of which occurred within Alabama, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the Compatible Parts market.

71. Defendant's unlawful conduct substantially affected intrastate trade and commerce in Alabama.

72. As a direct and proximate result of Defendant's unlawful conduct, members of the Alabama Class have been injured in their business or property and are threatened with further injury in that they paid supracompetitive prices for Compatible Parts due to Defendant's unlawful conduct.

**COUNT II**
**ARIZ. REV. STAT. §§ 44-1401 *ET SEQ.***
**(ON BEHALF OF THE ARIZONA CLASS)**

73. The allegations in the preceding paragraphs are incorporated as if fully stated herein.

74. Arizona Class members purchased Harley-Davidson Compatible Parts within Arizona during the Class Period. But for Defendant's conduct set forth herein, the price of the Compatible Parts would have been lower.

75. Through its unlawful tying scheme, Defendant acted in restraint of, or to monopolize, trade or commerce in the Compatible Parts market, a substantial part of which occurred within Arizona.

18

76.     Defendant established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the Compatible Parts market, a substantial part of which occurred within Arizona, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the Compatible Parts market.

77.     Defendant's unlawful conduct substantially affected intrastate trade and commerce in Arizona.

78.     As a direct and proximate result of Defendant's unlawful conduct, members of the Arizona Class have been injured in their business or property and are threatened with further injury in that they paid supra-competitive prices for Compatible Parts due to Defendant's unlawful conduct.

## COUNT III
## ARKANSAS DECEPTIVE TRADE PRACTICES ACT
### ARK. CODE § 4-88-101 *ET SEQ.*
### (ON BEHALF OF THE ARKANSAS CLASS)

79.     The allegations in the preceding paragraphs are incorporated as if fully stated herein.

80.     Arkansas Class members purchased Harley-Davidson Compatible Parts within Arkansas during the Class Period. But for Defendant's conduct set forth herein, the price of the Compatible Parts would have been lower.

81.     Through its unlawful tying scheme, Defendant acted in restraint of, or to monopolize, trade or commerce in the Compatible Parts market, a substantial part of which occurred within Arkansas.

82.     Defendant established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the Compatible Parts market, a substantial part of which occurred within Arkansas, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the Compatible Parts market.

19

83.     Defendant's unlawful conduct substantially affected intrastate trade and commerce in Arkansas.

84.     As a direct and proximate result of Defendant's unlawful conduct, members of the

85.     Arkansas Class have been injured in their business or prope1iy and are threatened with further injury in that they paid supracompetitive prices for Compatible Parts due to Defendant's unlawful conduct.

**COUNT IV**
**CAL. BUS. & PROF. CODE §§ 16720, 16750**
**(ON BEHALF OF THE CALIFORNIA CLASS)**

86.     The allegations in the preceding paragraphs are incorporated as if fully stated herein.

87.     California Class members purchased Harley-Davidson Compatible Parts within California during the Class Period. But for Defendant's conduct set forth herein, the price of the Compatible Parts would have been lower.

88.     Through its unlawful tying scheme, Defendant acted in restraint of, or to monopolize, trade or commerce in the Compatible Parts market, a substantial part of which occurred within California.

89.     Defendant established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the Compatible Parts market, a substantial part of which occurred within California, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the Compatible Parts market.

90.     Defendant's unlawful conduct substantially affected intrastate trade and commerce in California.

91.     As a direct and proximate result of Defendant's unlawful conduct, members of the California Class have been injured in their business or property and are threatened with further injury in that they paid supra-competitive prices for Compatible Parts due to Defendant's unlawful

20

conduct.

## COUNT V
## D.C. CODE §§ 28-4501 *ET SEQ.*
## (ON BEHALF OF THE DISTRICT OF COLUMBIA CLASS)

92.     The allegations in the preceding paragraphs are incorporated as if fully stated herein.

93.     District of Columbia Class members purchased Harley-Davidson Compatible Parts within the District of Columbia during the Class Period. But for Defendant's conduct set forth herein, the price of the Compatible Parts would have been lower.

94.     Through its unlawful tying scheme, Defendant acted m restraint of, or to monopolize, trade or commerce in the Compatible Parts market, a substantial part of which occurred within the District of Columbia.

95.     Defendant established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the Compatible Parts market, a substantial part of which occurred within the District of Columbia, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the Compatible Parts market.

96.     Defendant's unlawful conduct substantially affected intrastate trade and commerce in the District of Columbia.

97.     As a direct and proximate result of Defendant's unlawful conduct, members of the District of Columbia Class have been injured in their business or property and are threatened with further injury in that they paid supra-competitive prices for Compatible Parts due to Defendant's unlawful conduct.

## COUNT VI
## FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT
## FLA. STAT. §§ 501.201(2) *ET SEQ.*
## (ON BEHALF OF THE FLORIDA CLASS)

98.     The allegations in the preceding paragraphs are incorporated as if fully stated herein.

21

99.     Florida Class members purchased Harley-Davidson Compatible Parts within Florida during the Class Period. But for Defendant's conduct set forth herein, the price of the Compatible Parts would have been lower.

100.    Through its unlawful tying scheme, Defendant acted in restraint of, or to monopolize, trade or commerce in the Compatible Parts market, a substantial part of which occurred within Florida.

101.    Defendant established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the Compatible Parts market, a substantial part of which occurred within Florida, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the Compatible Parts market.

102.    Defendant's unlawful conduct substantially affected intrastate trade and commerce in Florida.

103.    As a direct and proximate result of Defendant's unlawful conduct, members of the Florida Class have been injured in their business or property and are threatened with further injury in that they paid supra-competitive prices for Compatible Parts due to Defendant's unlawful conduct.

**COUNT VII**
**HAWAII ANTITRUST ACT**
**HAW. REV. STAT. §§ 480-1, *ET SEQ.***
**(ON BEHALF OF THE HAWAII CLASS)**

104.    The allegations in the preceding paragraphs are incorporated as if fully stated herein.

105.    Hawaii Class members purchased Harley-Davidson Compatible Parts within Hawaii during the Class Period. But for Defendant's conduct set forth herein, the price of the Compatible Parts would have been lower.

106.    Through its unlawful tying scheme, Defendant acted in restraint of, or to

monopolize, trade or commerce in the Compatible Parts market, a substantial part of which occurred within Hawaii.

107.　Defendant established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the Compatible Parts market, a substantial part of which occurred within Hawaii, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the Compatible Parts market.

108.　Defendant's unlawful conduct substantially affected intrastate trade and commerce in Hawaii.

109.　As a direct and proximate result of Defendant's unlawful conduct, members of the Hawaii Class have been injured in their business or property and are threatened with further injury in that they paid supra-competitive prices for Compatible Parts due to Defendant's unlawful conduct.

## COUNT VIII
### ILLINOIS ANTITRUST ACT
### 740 ILL. COMP. STAT. ANN. 10/3(1), *ET SEQ.*
### (ON BEHALF OF THE ILLINOIS CLASS)

110.　The allegations in the preceding paragraphs are incorporated as if fully stated herein.

111.　Illinois Class members purchased Harley-Davidson Compatible Parts within Illinois during the Class Period. But for Defendant's conduct set forth herein, the price of the Compatible Parts would have been lower.

112.　Through its unlawful tying scheme, Defendant acted in restraint of, or to monopolize, trade or commerce in the Compatible Parts market, a substantial part of which occurred within Illinois.

113.　Defendant established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the Compatible Parts market, a substantial part of which

occurred within Illinois, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the Compatible Parts market.

114.     Defendant's unlawful conduct substantially affected intrastate trade and commerce in Illinois.

115.     As a direct and proximate result of Defendant's unlawful conduct, members of the Illinois Class have been injured in their business or property and are threatened with further injury in that they paid supra-competitive prices for Compatible Parts due to Defendant's unlawful conduct.

**COUNT IX**
**ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT**
**815 ILL. COMP. STAT. ANN. 505/10A, *ET SEQ.***
**(ON BEHALF OF THE ILLINOIS CLASS)**

116.     The allegations in the preceding paragraphs are incorporated as if fully stated herein.

117.      Illinois Class members purchased Harley-Davidson Compatible Parts within Illinois during the Class Period. But for Defendant's conduct set forth herein, the price of the Compatible Parts would have been lower.

118.     Through its unlawful tying scheme, Defendant acted in restraint of, or to monopolize, trade or commerce in the Compatible Parts market, a substantial part of which occurred within Illinois.

119.     Defendant established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the Compatible Parts market, a substantial part of which occurred within Illinois, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the Compatible Parts market.

120.     Defendant's unlawful conduct substantially affected intrastate trade and commerce in Illinois.

121.    As a direct and proximate result of Defendant's unlawful conduct, members of the Illinois Class have been injured in their business or property and are threatened with further injury in that they paid supra-competitive prices for Compatible Parts due to Defendant's unlawful conduct.

### COUNT X
### IOWA CODE §§ 553.1 *ET SEQ.*
### (ON BEHALF OF THE IOWA CLASS)

122.    The allegations in the preceding paragraphs are incorporated as if fully stated herein.

123.    Iowa Class members purchased Harley-Davidson Compatible Parts within Iowa during the Class Period. But for Defendant's conduct set forth herein, the price of the Compatible Parts would have been lower.

124.    Through its unlawful tying scheme, Defendant acted in restraint of, or to monopolize, trade or commerce in the Compatible Parts market, a substantial part of which occurred within Iowa.

125.    Defendant established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the Compatible Parts market, a substantial part of which occurred within Iowa, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the Compatible Parts market.

126.    Defendant's unlawful conduct substantially affected intrastate trade and commerce in Iowa.

127.    As a direct and proximate result of Defendant's unlawful conduct, members of the Iowa Class have been injured in their business or property and are threatened with further injury in that they paid supra-competitive prices for Compatible Parts due to Defendant's unlawful conduct.

### COUNT XI
### KAN. STAT. ANN. §§ 50-101 *ET SEQ.*

**(ON BEHALF OF THE KANSAS CLASS)**

128.    The allegations in the preceding paragraphs are incorporated as if fully stated herein.

129.    Kansas Class members purchased Harley-Davidson Compatible Parts within Kansas during the Class Period. But for Defendant's conduct set forth herein, the price of the Compatible Parts would have been lower.

130.    Through its unlawful tying scheme, Defendant acted in restraint of, or to monopolize, trade or commerce in the Compatible Parts market, a substantial part of which occurred within Kansas.

131.    Defendant established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the Compatible Parts market, a substantial part of which occurred within Kansas, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the Compatible Parts market.

132.    Defendant's unlawful conduct substantially affected intrastate trade and commerce in Kansas.

133.    As a direct and proximate result of Defendant's unlawful conduct, members of the Kansas Class have been injured in their business or property and are threatened with further injury in that they paid supra-competitive prices for Compatible Parts due to Defendant's unlawful conduct.

**COUNT XII**
**MAINE MONOPOLIES AND PROFITEERING LAW**
**ME. REV. STAT. TIT. 10, § 1101 *ET SEQ.***
**(ON BEHALF OF THE MAINE CLASS)**

134.    The allegations in the preceding paragraphs are incorporated as if fully stated herein.

135.    Maine Class members purchased Harley-Davidson Compatible Parts within Maine during the Class Period. But for Defendant's conduct set forth herein, the price of the Compatible

Parts would have been lower.

136. Through its unlawful tying scheme, Defendant acted in restraint of, or to monopolize, trade or commerce in the Compatible Parts market, a substantial part of which occurred within Maine.

137. Defendant established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the Compatible Parts market, a substantial part of which occurred within Maine, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the Compatible Parts market.

138. Defendant's unlawful conduct substantially affected intrastate trade and commerce in Maine.

139. As a direct and proximate result of Defendant's unlawful conduct, members of the Maine Class have been injured in their business or property and are threatened with further injury in that they paid supra-competitive prices for Compatible Parts due to Defendant's unlawful conduct.

## COUNT XIII
## MASSACHUSETTS CONSUMER PROTECTION LAW
## MASS. GEN. LAWS CHAPTER 93A
## (ON BEHALF OF THE MASSACHUSETTS CLASS)

140. The allegations in the preceding paragraphs are incorporated as if fully stated herein.

141. Massachusetts Class members purchased Harley-Davidson Compatible Parts within Massachusetts during the Class Period. But for Defendant's conduct set forth herein, the price of the Compatible Parts would have been lower.

142. Through its unlawful tying scheme, Defendant acted in restraint of, or to monopolize, trade or commerce in the Compatible Parts market, a substantial part of which occurred within Massachusetts.

27

143. Defendant established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the Compatible Parts market, a substantial part of which occurred within Massachusetts, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the Compatible Parts market.

144. Defendant's unlawful conduct substantially affected intrastate trade and commerce in Massachusetts.

145. As a direct and proximate result of Defendant's unlawful conduct, members of the Massachusetts Class have been injured in their business or property and are threatened with further injury in that they paid supra-competitive prices for Compatible Parts due to Defendant's unlawful conduct.

### COUNT XIV
### MICH. COMP. LAWS ANN. §§ 445.771 *ET SEQ.*
### (ON BEHALF OF THE MICHIGAN CLASS)

146. The allegations in the preceding paragraphs are incorporated as if fully stated herein.

147. Michigan Class members purchased Harley-Davidson Compatible Parts within Michigan during the Class Period. But for Defendant's conduct set forth herein, the price of the Compatible Parts would have been lower.

148. Through its unlawful tying scheme, Defendant acted in restraint of, or to monopolize, trade or commerce in the Compatible Parts market, a substantial part of which occurred within Michigan.

149. Defendant established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the Compatible Parts market, a substantial part of which occurred within Michigan, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the Compatible Parts market.

150. Defendant's unlawful conduct substantially affected intrastate trade and commerce

28

in Michigan.

151.    As a direct and proximate result of Defendant's unlawful conduct, members of the

Michigan Class have been injured in their business or property and are threatened with further

injury in that they paid supra-competitive prices for Compatible Parts due to Defendant's unlawful

conduct.

**COUNT XV**
**MINN. STAT. §§ 325D.49 *ET SEQ.***
**(ON BEHALF OF THE MINNESOTA CLASS)**

152.    The allegations in the preceding paragraphs are incorporated as if fully stated herein.

153.    Minnesota Class members purchased Harley-Davidson Compatible Parts within

Minnesota during the Class Period. But for Defendant's conduct set forth herein, the price of the

Compatible Parts would have been lower.

154.    Through its unlawful tying scheme, Defendant acted in restraint of, or to

monopolize, trade or commerce in the Compatible Parts market, a substantial part of which

occurred within Minnesota.

155.    Defendant established, maintained, or used a monopoly, or attempted to establish a

monopoly, of trade or commerce in the Compatible Parts market, a substantial part of which

occurred within Minnesota, for the purpose of excluding competition or controlling, fixing, or

maintaining prices in the Compatible Parts market.

156.     Defendant's unlawful conduct substantially affected intrastate trade and commerce

in Minnesota.

157.    As a direct and proximate result of Defendant's unlawful conduct, members of the

Minnesota Class have been injured in their business or property and are threatened with further

injury in that they paid supra-competitive prices for Compatible Parts due to Defendant's unlawful

conduct.

## COUNT XVI
## MISS. CODE ANN. §§ 75-21-1 *ET SEQ.*
## (ON BEHALF OF THE MISSISSIPPI CLASS)

158.    The allegations in the preceding paragraphs are incorporated as if fully stated herein.

159.    Mississippi Class members purchased Harley-Davidson Compatible Parts within Mississippi during the Class Period. But for Defendant's conduct set forth herein, the price of the Compatible Parts would have been lower.

160.    Through its unlawful tying scheme, Defendant acted in restraint of, or to monopolize, trade or commerce in the Compatible Parts market, a substantial part of which occurred within Mississippi.

161.    Defendant established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the Compatible Parts market, a substantial part of which occurred within Mississippi, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the Compatible Parts market.

162.     Defendant's unlawful conduct substantially affected intrastate trade and commerce in Mississippi.

163.    As a direct and proximate result of Defendant's unlawful conduct, members of the Mississippi Class have been injured in their business or property and are threatened with further injury in that they paid supra-competitive prices for Compatible Parts due to Defendant's unlawful conduct.

## COUNT XVII
## MISSOURI MERCHANDISING PRACTICES ACT
## MO. STAT. §§ 407.010 *ET SEQ.*
## (ON BEHALF OF THE MISSOURI CLASS)

164.    The allegations in the preceding paragraphs are incorporated as if fully stated herein.

165.    Missouri Class members purchased Harley-Davidson Compatible Parts within

30

Missouri during the Class Period. But for Defendant's conduct set forth herein, the price of the Compatible Parts would have been lower.

166.    Through its unlawful tying scheme, Defendant acted in restraint of, or to monopolize, trade or commerce in the Compatible Parts market, a substantial part of which occurred within Missouri.

167.    Defendant established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the Compatible Parts market, a substantial part of which occurred within Missouri, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the Compatible Parts market.

168.    Defendant's unlawful conduct substantially affected intrastate trade and commerce in Missouri.

169.    As a direct and proximate result of Defendant's unlawful conduct, members of the Missouri Class have been injured in their business or property and are threatened with further injury in that they paid supra-competitive prices for Compatible Parts due to Defendant's unlawful conduct.

## COUNT XVIII
## MONTANA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION ACT
## MONT. CODE §§ 30-14-101, *ET SEQ.*
## (ON BEHALF OF THE MONTANA CLASS)

170.    The allegations in the preceding paragraphs are incorporated as if fully stated herein.

171.    Montana Class members purchased Harley-Davidson Compatible Parts within Montana during the Class Period. But for Defendant's conduct set forth herein, the price of the Compatible Parts would have been lower.

172.    Through its unlawful tying scheme, Defendant acted in restraint of, or to monopolize, trade or commerce in the Compatible Parts market, a substantial part of which

31

occurred within Montana.

173.    Defendant established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the Compatible Parts market, a substantial part of which occurred within Montana, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the Compatible Parts market.

174.     Defendant's unlawful conduct substantially affected intrastate trade and commerce in Montana.

175.    As a direct and proximate result of Defendant's unlawful conduct, members of the Montana Class have been injured in their business or property and are threatened with further injury in that they paid supra-competitive prices for Compatible Parts due to Defendant's unlawful conduct.

**COUNT XIX**
**NEB. REV. STAT. §§ 59-801 *ET SEQ.***
**(ON BEHALF OF THE NEBRASKA CLASS)**

176.    The allegations in the preceding paragraphs are incorporated as if fully stated herein.

177.    Nebraska Class members purchased Harley-Davidson Compatible Parts within Nebraska during the Class Period. But for Defendant's conduct set forth herein, the price of the Compatible Parts would have been lower.

178.    Through its unlawful tying scheme, Defendant acted in restraint of, or to monopolize, trade or commerce in the Compatible Parts market, a substantial part of which occurred within Nebraska.

179.    Defendant established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the Compatible Parts market, a substantial part of which occurred within Nebraska, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the Compatible Parts market.

180.    Defendant's unlawful conduct substantially affected intrastate trade and commerce in Nebraska.

181.    As a direct and proximate result of Defendant's unlawful conduct, members of the Nebraska Class have been injured in their business or property and are threatened with further injury in that they paid supra-competitive prices for Compatible Parts due to Defendant's unlawful conduct.

**COUNT XX**
**NEV. REV. STAT. ANN. §§ 598A.010 *ET SEQ.***
**(ON BEHALF OF THE NEVADA CLASS)**

182.    The allegations in the preceding paragraphs are incorporated as if fully stated herein.

183.    Class members purchased Harley-Davidson Compatible Parts within Nevada during the Class Period. But for Defendant's conduct set forth herein, the price of the Compatible Parts would have been lower.

184.    Through its unlawful tying scheme, Defendant acted in restraint of, or to monopolize, trade or commerce in the Compatible Parts market, a substantial part of which occurred within Nevada.

185.    Defendant established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the Compatible Parts market, a substantial part of which occurred within Nevada, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the Compatible Parts market.

186.    Defendant's unlawful conduct substantially affected intrastate trade and commerce in Nevada.

187.    As a direct and proximate result of Defendant's unlawful conduct, members of the Nevada Class have been injured in their business or property and are threatened with further injury in that they paid supra-competitive prices for Compatible Parts due to Defendant's unlawful

33

conduct.

**COUNT XXI**
**N.H. REV. STAT. §§ 356:1 *ET SEQ.***
**(ON BEHALF OF THE NEW HAMPSHIRE CLASS)**

188.    The allegations in the preceding paragraphs are incorporated as if fully stated herein.

189.    New Hampshire Class members purchased Harley-Davidson Compatible Parts within New Hampshire during the Class Period. But for Defendant's conduct set forth herein, the price of the Compatible Parts would have been lower.

190.    Through its unlawful tying scheme, Defendant acted in restraint of, or to monopolize, trade or commerce in the Compatible Parts market, a substantial part of which occurred within New Hampshire.

191.    Defendant established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the Compatible Parts market, a substantial part of which occurred within New Hampshire, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the Compatible Parts market.

192.     Defendant's unlawful conduct substantially affected intrastate trade and commerce in New Hampshire.

193.    As a direct and proximate result of Defendant's unlawful conduct, members of the New Hampshire Class have been injured in their business or property and are threatened with further injury in that they paid supra-competitive prices for Compatible Parts due to Defendant's unlawful conduct.

**COUNT XXII**
**N.M. STAT. ANN. §§ 57-1-1 *ET SEQ.***
**(ON BEHALF OF THE NEW MEXICO CLASS)**

194.    The allegations in the preceding paragraphs are incorporated as if fully stated herein.

195.    New Mexico Class members purchased Harley-Davidson Compatible Parts within

34

New Mexico during the Class Period. But for Defendant's conduct set forth herein, the price of the Compatible Parts would have been lower.

196.     Through its unlawful tying scheme, Defendant acted in restraint of, or to monopolize, trade or commerce in the Compatible Parts market, a substantial part of which occurred within New Mexico.

197.     Defendant established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the Compatible Parts market, a substantial part of which occurred within New Mexico, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the Compatible Parts market.

198.     Defendant's unlawful conduct substantially affected intrastate trade and commerce in New Mexico.

199.     As a direct and proximate result of Defendant's unlawful conduct, members of the New Mexico Class have been injured in their business or property and are threatened with further injury in that they paid supra-competitive prices for Compatible Parts due to Defendant's unlawful conduct.

## COUNT XXIII
### THE DONNELLY ACT, N.Y. GEN. BUS. LAW §§ 340 *ET SEQ.*
### (ON BEHALF OF THE NEW YORK CLASS)

200.     The allegations in the preceding paragraphs are incorporated as if fully stated herein.

201.     New York Class members purchased Harley-Davidson Compatible Parts within New York during the Class Period. But for Defendant's conduct set forth herein, the price of the Compatible Parts would have been lower.

202.     Through its unlawful tying scheme, Defendant acted in restraint of, or to monopolize, trade or commerce in the Compatible Parts market, a substantial part of which occurred within New York.

35

203.    Defendant established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the Compatible Parts market, a substantial part of which occurred within New York, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the Compatible Parts market.

204.    Defendant's unlawful conduct substantially affected intrastate trade and commerce in New York.

205.    As a direct and proximate result of Defendant's unlawful conduct, members of the New York Class have been injured in their business or property and are threatened with further injury in that they paid supra-competitive prices for Compatible Parts due to Defendant's unlawful conduct.

## COUNT XXIV
## N.C. GEN. STAT. §§ 75-1 *ET SEQ.*
## (ON BEHALF OF THE NORTH CAROLINA CLASS)

206.    The allegations in the preceding paragraphs are incorporated as if fully stated herein.

207.    North Carolina Class members purchased Harley-Davidson Compatible Parts within North Carolina during the Class Period. But for Defendant's conduct set forth herein, the price of the Compatible Parts would have been lower.

208.    Through its unlawful tying scheme, Defendant acted in restraint of, or to monopolize, trade or commerce in the Compatible Parts market, a substantial part of which occurred within North Carolina.

209.    Defendant established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the Compatible Parts market, a substantial part of which occurred within North Carolina, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the Compatible Parts market.

210.    Defendant's unlawful conduct substantially affected intrastate trade and commerce

36

in North Carolina.

211.     As a direct and proximate result of Defendant's unlawful conduct, members of the North Carolina Class have been injured in their business or property and are threatened with further injury in that they paid supra-competitive prices for Compatible Parts due to Defendant's unlawful conduct.

## COUNT XXV
## N.D. CENT. CODE §§ 51-08.1-01 *ET SEQ.*
## (ON BEHALF OF THE NORTH DAKOTA CLASS)

212.     The allegations in the preceding paragraphs are incorporated as if fully stated herein.

213.     North Dakota Class members purchased Harley-Davidson Compatible Parts within North Dakota during the Class Period. But for Defendant's conduct set forth herein, the price of the Compatible Parts would have been lower.

214.     Through its unlawful tying scheme, Defendant acted in restraint of, or to monopolize, trade or commerce in the Compatible Parts market, a substantial part of which occurred within North Dakota.

215.     Defendant established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the Compatible Parts market, a substantial part of which occurred within North Dakota, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the Compatible Parts market.

216.      Defendant's unlawful conduct substantially affected intrastate trade and commerce in North Dakota.

217.     As a direct and proximate result of Defendant's unlawful conduct, members of the North Dakota Class have been injured in their business or property and are threatened with further injury in that they paid supra-competitive prices for Compatible Parts due to Defendant's unlawful conduct.

**COUNT XXVI**
**OR. REV. STAT. §§ 646.705 *ET SEQ.***
**(ON BEHALF OF THE OREGON CLASS)**

218. The allegations in the preceding paragraphs are incorporated as if fully stated herein.

219. Oregon Class members purchased Harley-Davidson Compatible Parts within Oregon during the Class Period. But for Defendant's conduct set forth herein, the price of the Compatible Parts would have been lower.

220. Through its unlawful tying scheme, Defendant acted in restraint of, or to monopolize, trade or commerce in the Compatible Parts market, a substantial part of which occurred within Oregon.

221. Defendant established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the Compatible Parts market, a substantial part of which occurred within Oregon, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the Compatible Parts market.

222. Defendant's unlawful conduct substantially affected intrastate trade and commerce in Oregon.

223. As a direct and proximate result of Defendant's unlawful conduct, members of the Oregon Class have been injured in their business or property and are threatened with further injury in that they paid supra-competitive prices for Compatible Parts due to Defendant's unlawful conduct.

**COUNT XXVII**
**RHODE ISLAND ANTITRUST ACT**
**R.I. GEN. LAW §§ 6-36-1 *ET SEQ.***
**(ON BEHALF OF THE RHODE ISLAND CLASS)**

224. The allegations in the preceding paragraphs are incorporated as if fully stated herein.

225. Rhode Island Class members purchased Harley-Davidson Compatible Parts within

Rhode Island during the Class Period. But for Defendant's conduct set forth herein, the price of the Compatible Parts would have been lower.

226. Through its unlawful tying scheme, Defendant acted in restraint of, or to monopolize, trade or commerce in the Compatible Parts market, a substantial part of which occurred within Rhode Island.

227. Defendant established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the Compatible Parts market, a substantial part of which occurred within Rhode Island, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the Compatible Parts market.

228. Defendant's unlawful conduct substantially affected intrastate trade and commerce in Rhode Island.

229. As a direct and proximate result of Defendant's unlawful conduct, members of the Rhode Island Class have been injured in their business or property and are threatened with further injury in that they paid supra-competitive prices for Compatible Parts due to Defendant's unlawful conduct.

## COUNT XXVIII
## SOUTH CAROLINA UNFAIR TRADE PRACTICES ACT
## S.C. CODE ANN. §§ 39-5-10, *ET SEQ.*
## (ON BEHALF OF THE SOUTH CAROLINA CLASS)

230. The allegations in the preceding paragraphs are incorporated as if fully stated herein.

231. South Carolina Class members purchased Harley-Davidson Compatible Parts within South Carolina during the Class Period. But for Defendant's conduct set forth herein, the price of the Compatible Parts would have been lower.

232. Through its unlawful tying scheme, Defendant acted in restraint of, or to monopolize, trade or commerce in the Compatible Parts market, a substantial part of which

39

occurred within South Carolina.

233. Defendant established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the Compatible Parts market, a substantial part of which occurred within South Carolina, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the Compatible Parts market.

234. Defendant's unlawful conduct substantially affected intrastate trade and commerce in South Carolina.

235. As a direct and proximate result of Defendant's unlawful conduct, members of the South Carolina Class have been injured in their business or property and are threatened with further injury in that they paid supra-competitive prices for Compatible Parts due to Defendant's unlawful conduct.

## COUNT XXIX
## S.D. CODIFIED LAWS §§ 37-1-3.1 *ET SEQ.*
## (ON BEHALF OF THE SOUTH DAKOTA CLASS)

236. The allegations in the preceding paragraphs are incorporated as if fully stated herein.

237. South Dakota Class members purchased Harley-Davidson Compatible Parts within South Dakota during the Class Period. But for Defendant's conduct set forth herein, the price of the Compatible Parts would have been lower.

238. Through its unlawful tying scheme, Defendant acted in restraint of, or to monopolize, trade or commerce in the Compatible Parts market, a substantial part of which occurred within South Dakota.

239. Defendant established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the Compatible Parts market, a substantial part of which occurred within South Dakota, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the Compatible Parts market.

40

240.    Defendant's unlawful conduct substantially affected intrastate trade and commerce in South Dakota.

241.    As a direct and proximate result of Defendant's unlawful conduct, members of the South Dakota Class have been injured in their business or property and are threatened with further injury in that they paid supra-competitive prices for Compatible Parts due to Defendant's unlawful conduct.

## COUNT XXX
### TENN. CODE ANN. §§ 47-25-101 *ET SEQ.*
### (ON BEHALF OF THE TENNESSEE CLASS)

242.    The allegations in the preceding paragraphs are incorporated as if fully stated herein.

243.    Tennessee Class members purchased Harley-Davidson Compatible Parts within Tennessee during the Class Period. But for Defendant's conduct set forth herein, the price of the Compatible Parts would have been lower.

244.    Through its unlawful tying scheme, Defendant acted in restraint of, or to monopolize, trade or commerce in the Compatible Parts market, a substantial part of which occurred within Tennessee.

245.    Defendant established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the Compatible Parts market, a substantial part of which occurred within Tennessee, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the Compatible Parts market.

246.    Defendant's unlawful conduct substantially affected intrastate trade and commerce in Tennessee.

247.    As a direct and proximate result of Defendant's unlawful conduct, members of the Tennessee Class have been injured in their business or property and are threatened with further injury in that they paid supra-competitive prices for Compatible Parts due to Defendant's unlawful

41

conduct.

## COUNT XXXI
### UTAH CODE ANN. §§ 76-10-3101 *ET SEQ.*
### (ON BEHALF OF THE UTAH CLASS)

248. The allegations in the preceding paragraphs are incorporated as if fully stated herein.

249. Utah Class members purchased Harley-Davidson Compatible Parts within Utah during the Class Period. But for Defendant's conduct set forth herein, the price of the Compatible Parts would have been lower.

250. Through its unlawful tying scheme, Defendant acted in restraint of, or to monopolize, trade or commerce in the Compatible Parts market, a substantial part of which occurred within Utah.

251. Defendant established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the Compatible Parts market, a substantial part of which occurred within Utah, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the Compatible Parts market.

252. Defendant's unlawful conduct substantially affected intrastate trade and commerce in Utah.

253. As a direct and proximate result of Defendant's unlawful conduct, members of the Utah Class have been injured in their business or property and are threatened with further injury in that they paid supra-competitive prices for Compatible Parts due to Defendant's unlawful conduct.

## COUNT XXXII
### 9 V.S.A §§ 2453 *ET SEQ.*
### (ON BEHALF OF THE VERMONT CLASS)

254. The allegations in the preceding paragraphs are incorporated as if fully stated herein.

255. Vermont Class members purchased Harley-Davidson Compatible Parts within Vermont during the Class Period. But for Defendant's conduct set forth herein, the price of the

42

Compatible Parts would have been lower.

256. Through its unlawful tying scheme, Defendant acted in restraint of, or to monopolize, trade or commerce in the Compatible Parts market, a substantial part of which occurred within Vermont.

257. Defendant established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the Compatible Parts market, a substantial part of which occurred within Vermont, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the Compatible Parts market.

258. Defendant's unlawful conduct substantially affected intrastate trade and commerce in Vermont.

259. As a direct and proximate result of Defendant's unlawful conduct, members of the Vermont Class have been injured in their business or property and are threatened with further injury in that they paid supra-competitive prices for Compatible Parts due to Defendant's unlawful conduct.

## COUNT XXXIII
## W. VA. CODE §§ 47-18-1 *ET SEQ.*
## (ON BEHALF OF THE WEST VIRGINIA CLASS)

260. The allegations in the preceding paragraphs are incorporated as if fully stated herein.

261. West Virginia Class members purchased Harley-Davidson Compatible Parts within West Virginia during the Class Period. But for Defendant's conduct set forth herein, the price of the Compatible Parts would have been lower.

262. Through its unlawful tying scheme, Defendant acted in restraint of, or to monopolize, trade or commerce in the Compatible Parts market, a substantial part of which occurred within West Virginia.

263. Defendant established, maintained, or used a monopoly, or attempted to establish a

monopoly, of trade or commerce in the Compatible Parts market, a substantial part of which occurred within West Virginia, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the Compatible Parts market.

264. Defendant's unlawful conduct substantially affected intrastate trade and commerce in West Virginia.

265. As a direct and proximate result of Defendant's unlawful conduct, members of the West Virginia Class have been injured in their business or property and are threatened with further injury in that they paid supra-competitive prices for Compatible Parts due to Defendant's unlawful conduct.

## COUNT XXXIV
## WIS. STAT. §§ 133.01 *ET SEQ.*
## (ON BEHALF OF THE WISCONSIN CLASS)

266. The allegations in the preceding paragraphs are incorporated as if fully stated herein.

267. Wisconsin Class members purchased Harley-Davidson Compatible Parts within Wisconsin during the Class Period. But for Defendant's conduct set forth herein, the price of the Compatible Parts would have been lower.

268. Through its unlawful tying scheme, Defendant acted in restraint of, or to monopolize, trade or commerce in the Compatible Parts market, a substantial part of which occurred within Wisconsin.

269. Defendant established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the Compatible Parts market, a substantial part of which occurred within Wisconsin, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the Compatible Parts market.

270. Defendant's unlawful conduct substantially affected intrastate trade and commerce in Wisconsin.

271. As a direct and proximate result of Defendant's unlawful conduct, members of the Wisconsin Class have been injured in their business or property and are threatened with further injury in that they paid supra-competitive prices for Compatible Parts due to Defendant's unlawful conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment against Defendant as follows:

a. The Court determine that this action may be maintained as a class action under Federal Rules of Civil Procedure 23(a) and 23(b)(3), appoint Plaintiffs as Class Representatives, and their counsel of record as Class Counsel, and direct that a practicable time notice of this action be given to the Class.

b. Judgment that Defendant's conduct violates the state laws asserted in this Complaint, which permit indirect purchasers to cover damages for antitrust violations.

c. Plaintiffs and the Class recover damages to the maximum amount allowed by law.

d. Plaintiffs recover reasonable attorneys' fees and costs as allowed by law.

e. Plaintiffs recover pre- and post-judgment interest at the highest rate allowed by law.

f. Plaintiffs and the Class be granted such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury.


Dated: January 23, 2023               By: */s/  Elizabeth A. Fegan*
                                      Elizabeth A. Fegan
                                      FEGAN SCOTT LLC
                                      150 S. Wacker Dr., 24th Floor
                                      Chicago, IL 60606
                                      Tel: 312.741.1019
                                      Facsimile: 312.264.0680
                                      beth@feganscott.com

45

Ling S. Wang*
FEGAN SCOTT LLC
100 S. Fifth Street, Suite 1900
Minneapolis, MN 55402
Tel: 651-432-4468
ling@feganscott.com

David Freydin
LAW OFFICES OF DAVID FREYDIN LTD
8707 Skokie Blvd., Suite 305
Skokie, IL 60077
(312) 544-0365
David.freydin@freydinlaw.com

*pro hac vice forthcoming*